UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In Re: | ) CASE NO. C15-1028 RSM |
| | ) |
| DUANE ROWETT and REBECCA | ) |
| ROWETT, | ) ORDER GRANTING U.S. TRUSTEE'S |
| | ) MOTION FOR WITHDRAWAL OF |
| Debtors. | ) REFERENCE |
| | ) |
| | ) |
| UNITED STATES TRUSTEE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| INSTITUTE OF PERSONAL WEALTH | ) |
| CREDIT COUNSELORS | ) |
| INTERNATIONAL, GREGORY S. TIFT, | ) |
| and JENNIE LEE LANAHAN, | ) |
| | ) |
| Defendants. | ) |

## I.     INTRODUCTION

This matter comes before the Court on the United States Trustee's Motion for Withdrawal of Reference, asking this Court to take jurisdiction over this bankruptcy matter in order to institute further proceedings against Gregory S. Tift to find him in criminal contempt, and to impose appropriate criminal contempt sanctions.  Dkt. #1.  Mr. Tift objects to the motion, essentially arguing that he has not engaged in the conduct of which he has been

ORDER
PAGE - 1

accused.  Dkts. #5 and #6.  For the reasons set forth below, the Court finds good cause to withdraw the automatic reference and resume jurisdiction over this matter solely with respect to criminal contempt proceedings.  All other bankruptcy issues remain under the jurisdiction of the bankruptcy court.  Accordingly, the Trustee's motion is GRANTED as discussed herein.

## II.    BACKGROUND

This matter has been transferred to this Court upon recommendation by United States Bankruptcy Judge Timothy W. Dore.  Dkt. #1 at 280-282.  By way of background, Judge Dore provides the following:

### TIFT'S CONDUCT

**This Adversary Proceeding.**

On March 6, 2013, I entered a stipulated judgment in this adversary proceeding that enjoins Tift from: (1) serving as a bankruptcy petition preparer, and (2) filing or preparing any document to be filed in any United States Bankruptcy Court without permission from this Court [Docket No. 258] ("Stipulated Judgment").  The Stipulated Judgment was entered six days before the scheduled trial and reflected a settlement of very contentious litigation.

Tift has violated the Stipulated Judgment many times.  I have entered three monetary judgments in this adversary proceeding totaling $81,500 against Tift based on his violations of the Stipulated Judgment [Docket Nos. 279, 302 and 350] ("Money Judgments").  I have also entered an order in this adversary proceeding that includes findings that even after the entry of the Money Judgments, Tift "has continued to show blatant disregard for the Stipulated Judgment" and "filed approximately 38 documents or pleadings" in violation of the Stipulated Judgment [Docket No. 355].

The UST has submitted evidence that Tift made no payments toward the Money Judgments [Docket No. 365].  Tift has submitted evidence that he paid $50 [Docket No. 375].  Something more than additional fines and civil contempt sanctions appear necessary to force Tift to comply with the Stipulated Judgment or punish him for further violations of the Stipulated Judgment.

**Other Bankruptcy Cases.**

ORDER
PAGE - 2

Before and after entry of the Stipulated Judgment, Tift has participated in many bankruptcy cases and adversary proceedings in this district. In many instances, Tift's conduct has been disruptive to the legitimate operations of the bankruptcy court and drawn sharp criticism from the assigned bankruptcy judges. As just two examples involving other bankruptcy judges in this district:

- In the Dunes Motel, Inc. bankruptcy case, Bankruptcy No. 12-20811, the bankruptcy judge determined that Tift "acted in bad faith," engaged in "extremely egregious behavior, totally reprehensible behavior," and probably violated "criminal bankruptcy laws." See, Smith Declaration [Docket No. 366, Ex. 4].

- In the Park v. Fannie Mae adversary proceeding, Adversary No. 14-04214, the bankruptcy judge struck pleadings that Tift had filed in violation of the Stipulated Judgment stating "I think that was an intentional and knowing violation of that order." See, Docket No. 27 in Adversary No. 14-04214.

Tift's conduct has been sufficiently egregious that once in 2013 and again in 2015 a bankruptcy judge in this district made an 18 U.S.C. § 3057(a) report to the United States Attorney requesting that Tift be investigated for criminal prosecution. I do not know the status of any such investigation that might exist.

Dkt. #1 at 282-282 (brackets in original; footnotes omitted).

The United States Trustee provides the following additional background, which prompted it to file the instant motion:

Tift has, among other things, operated as a bankruptcy petition preparer within the meaning of Bankruptcy Code section 110 for many years. In 2007, the United States Trustee filed a complaint against Tift in the Gregory W. Hamilton case, bankruptcy case number 07-12244, adversary proceeding number 08-01007, for violations of section 110. The complaint alleged that Tift violated section 110 by giving the debtor legal advice, thereby engaging in the unauthorized practice of law. On the eve of trial Tift agreed to a Stipulated Judgment signed by Bankruptcy Judge Samuel Steiner on December 8, 2008 (the "2008 Stipulated Judgment"). The 2008 Stipulated Judgment enjoined Tift from serving as a bankruptcy petition preparer in any bankruptcy court in the Western District of Washington unless, and until, Tift becomes licensed to practice law.

The above-captioned adversary proceeding was initiated on December 22, 2011, by the United States Trustee filing a Complaint for Injunctive Relief,

ORDER
PAGE - 3

Fines, Damages, Attorney's Fees, and Contempt (the "Complaint") because Tift continued to act as a bankruptcy petition preparer in violation of the 2008 Stipulated Judgment. . . .   The defendants in the adversary proceeding included Tift, his company Institute of Personal Wealth Credit Counselors International, and another individual.   The action with respect to Tift and his company was settled prior to trial with entry of the Stipulated Judgment.

Paragraph 3 of the Stipulated Judgment enjoins Tift from filing any document in any bankruptcy court without first obtaining an order of the bankruptcy court authorizing the filing, entered after notice to the United States Trustee.   Tift has demonstrated a pattern of violating the Stipulated Judgment as evidenced by the entry of the Money Judgments for such violations, including: judgment for $11,500 entered on April 30, 2013, which included a $10,000 fine and $1,500 required to be paid under the Stipulated Judgment that was, and still is, unpaid; judgment for $10,000 entered on May 31, 2013; and judgment for $60,000 entered on October 22, 2014.

Also, beginning in approximately May of 2011, Tift filed a series of voluntary and involuntary chapter 11 petitions in bankruptcy for corporate debtors.   Tift's intent in filing the corporations in bankruptcy court was to delay and defraud the secured creditor lenders who were in the process of foreclosing on real properties owned by the corporate debtors.   Because bankruptcy filings give rise to automatic stays that protect debtors' properties, the bankruptcy filings forced the lenders to cancel foreclosure sales or actions in state court for the appointment of receivers.   The lenders could not proceed with their actions against the properties until they filed motions with the bankruptcy court and obtained court orders lifting the automatic stay.   In most or all of the corporate cases, Tift filed extensive motions and objections to further delay and defraud the lenders and prevent lifting of the automatic stay or dismissal of the cases.   Tift's foreclosure schemes delayed the lenders for months in each case and caused them to spend hundreds of thousands of dollars to defend against Tift's motions and objections.
. . .

C.  Tift's Most Recent Violation of the Stipulated Judgment.

On March 12, 2015 (the "Petition Date"), a chapter 11 case for Zandt Properties, Inc. ("Zandt Properties") was filed by the company's principal Evangeline Zandt ("Zandt") at the Tacoma Bankruptcy Court, case no. 15-11501 ("Zandt 1").   As discussed below, a second chapter 11 petition for Zandt Properties was filed by Tift late on the evening of the Petition Date ("Zandt 2").

Zandt 2, case no. 15-11488, was initiated by the electronic filing of a chapter 11 bankruptcy petition (the "Zandt 2 Petition") at approximately 10 p.m. on the Petition Date.  As evidenced by the facts set forth below, Tift filed the Zandt 2 Petition using the ECF credentials of attorney Henry Chae ("Chae").  The Zandt 2 Petition filed by Tift was entirely blank – no fields, including the signature of Zandt, were filled in.   The bankruptcy court ultimately dismissed Zandt 2 because of the blank Petition.

Tift's involvement with Zandt 2 and his filing of the Zandt 2 Petition is substantiated and evidenced by various facts, and reasonable inferences from those facts.  First, Tift knows Chae because Chae represents Tift on certain matters in state court. . . .  According to Chae, Tift referred Zandt Properties to him, and Tift worked with Zandt.

Second, Chae employs Nancy Seong ("Seong") to help him in his law practice.  Further, Seong knows Tift.  In fact, Tift has a long-standing relationship with Seong.  For example, in the past Tift has employed Seong through his company, the Institute of Personal Wealth Credit Counselors International.

Finally, attached to the Smith Decl. as **Exhibit 9** are excerpts from the transcript of the meeting of creditors held in the Zandt 1 chapter 11 case on April 22, 2015 (the "341 Transcript") that implicates Tift as the filer of the Petition.  The pertinent testimony includes:

a.     Dirk Mayberry ("Mayberry") had his company Redwater Associates, Inc. transfer a parcel of real property (the "Property") to Zandt Properties shortly before Zandt filed Zandt 1.  Mayberry told Zandt that she should file Zandt Properties into bankruptcy to stop a pending foreclosure on the Property.   Following Mayberry's instructions, Zandt went to the Tacoma courthouse and filed the bankruptcy documents necessary to initiate Zandt 1.  However, the Bankruptcy Clerk did not assign a case number at the time of the filing, and so Zandt became worried that the bankruptcy case was not properly filed.

b.  After leaving the Tacoma courthouse, Zandt called Mayberry about her concern that she had not received a bankruptcy case number that could be used to stop the pending foreclosure. Mayberry said he would find someone to take care of the issue.

c.  On the evening of the Petition Date, Mayberry drove Zandt to a location in or around Ballard or Fremont.  Mayberry and Zandt went to an office, where they were met by "Greg" who Zandt understood to be Chae's assistant.  Zandt explained her need for a bankruptcy case

ORDER
PAGE - 5

number to Greg, who then electronically filed the Zandt 2 Petition and gave her case no. 15-11488.

    d.  Chae was never present during the time Zandt met with Greg, and Zandt has never met Chae.

    e.  Greg gave Zandt a receipt for payment of certain funds.

The United States Trustee has been informed that Tift maintains a Fremont office for his company HHP LLC at the Fremont Space Building, 600 N. 36th St. #1 Seattle, WA 98103.  It is presumed that this is where Mayberry took Zandt to meet Tift.

In contrast to Zandt's candid and (relatively) consistent testimony, Chae's testimony on April 24, 2015, regarding his involvement in the Zandt 2 bankruptcy and the filing of the Zandt 2 Petition was anything but candid -- and it is facially not believable.  For example, Chae flatly denies letting Tift or anyone else use his ECF credentials. Chae Transcript.  However, when Chae is asked specifically whether he filed the Zandt 2 Petition, he asserts the attorney-client privilege and refuses to answer the question.  At that point the United States Trustee stops the examination, and the parties adjourn to Bankruptcy Judge Barecca's [sic] courtroom for a ruling on Chae's assertion of the privilege.  After Judge Barecca rules that the attorney-client privilege does not apply, the examination is reconvened and Chae is again asked whether he filed the Zandt 2 Petition.  At that point Chae testifies that he does not know if he filed the Zandt 2 Petition stating: "I mean, yeah, it may have been me."  At one point in the examination Chae seems to be weighing the possible consequences of admitting Tift filed the Zandt 2 Petition, against sticking to his story that he has never let anyone use his ECF credentials:

    **Q.**      You realize you're responsible for the filing of this pleading because your ECF credential was used?

    **A.**      I understand that, and it has my name on it. Yes.

    **Q.**      Did you actually file it?

    **A.**      That's what it shows. Yes.

    **Q.**      I know what it shows, but I'm asking you. I'm giving you the chance, if you didn't file it, to say so.

ORDER
PAGE - 6

A.           Well, here's the thing. I don't know what the penalties are if I did make a mistake again. I don't know the nuances of Bankruptcy Court if I did screw up. I guess I'm going to assert the fifth, if you will.

Chae's lack of credibility is also underscored by his deposition testimony that he met with Zandt about the Zandt 2 bankruptcy case. Chae's assertion that he met Zandt is contrary to Zandt's testimony at the creditors' meeting that she has never met Chae – only his assistant "Greg." The United States Trustee asked Chae about Zandt's physical characteristics, *e.g.* height, ethnicity, hair color, etc. Chae had absolutely no idea what Zandt looks like:

**Mr. Smith:** Did you ever meet Evangeline Zandt?

**The Witness:** Yes.

**Mr. Smith:** That's interesting because she says she's never met you. She was given your card by Greg when she was also given this receipt signed by Greg. When did you meet her?

**The Witness:** It could be the end of February – around the end of February.

**Mr. Smith:** Where did you meet her?

**The Witness:** It might have been over at Fremont.

**Mr. Smith:** On the street?

**The Witness:** (nodding head).

**Mr. Smith:** You have to verbalize your answer.

**The Witness:** Yes.

**Mr. Smith:** Can you tell me what she looks like? Just a general description?

**Witness:** I cannot.

**Mr. Smith:** Can you tell me what ethnicity she is?

**Witness:** I cannot.

ORDER
PAGE - 7

**Mr. Smith:**  Can you tell me whether she's 5 feet or 6 feet tall?

**Witness:**  I cannot.

**Mr. Smith:**  Blond hair? Dark hair?

**Witness:**  (shaking head)

**Mr. Smith:**  Is that a no?

**Witness:**  I cannot.

Chae's testimony above reinforces the conclusion that he lied about meeting Zandt.  Between that false testimony, and Zandt's contrary testimony that Chae's assistant Greg helped her and filed the Zandt 2 Petition, it is a reasonable inference that Chae is also lying when he says that he filed the Zandt 2 Petition and that he did not give Tift his ECF password.

Tift did not seek permission of the bankruptcy court to file the Zandt 2 Petition as required by the Stipulated Judgment, and there is no Order authorizing him to file the document.  Therefore, the filing of the Zandt 2 Petition is a violation of the Stipulated Judgment which, pursuant to paragraph 4, provides for a $10,000 fine.  However, as stated above, the United States Trustee is not seeking imposition of another $10,000 fine because, given Tift's history, an additional small fine is a useless act that will do nothing to deter Tift from violating the Stipulated Judgment or engaging in further abusive tactics and practices.

The above facts illustrate why a finding of criminal contempt is appropriate.  The contempt is based on Tift's repeated violations of the Stipulated Judgment, his failure to pay the outstanding fines assessed for those violations, and his recent filing of the Zandt 2 Petition using Chae's ECF password to conceal his action.

Dkt. #1 at 40-47 (abridged; citations and footnotes omitted).

## III.   DISCUSSION

The Western District of Washington has referred to bankruptcy judges "all proceedings arising under Title 11 or arising in or related to a case under Title 11."  LCR 87; 28 U.S.C. § 157(a).  Bankruptcy judges in turn are empowered to "hear and determine all cases under Title

ORDER
PAGE - 8

11 and all core proceedings arising under Title 11, or arising in a case under Title 11" that have been referred by the district court. 28 U.S.C. § 157(b)(1). If a proceeding is not a core proceeding, as classified under the Bankruptcy Code, 28 U.S.C. § 157(b)(2), but is "otherwise related to a case under Title 11," the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, which shall enter final order and judgment, with any disputed findings and conclusions subject to *de novo* review. 28 U.S.C. § 157(c). On its own or on timely motion of a party, this Court may withdraw any referred proceeding for cause shown. 28 U.S.C. § 157(d).

   1. *Cause for Withdrawal of Reference*

   In determining whether cause exists to withdraw the reference under § 157(d) of the Bankruptcy Code, courts consider: "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *Security Farms v. International Broth. of Teamsters, Chauffer, Warehousemen, & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Orion Pictures, Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)). Questions of efficiency and uniformity turn largely on the district court's evaluation of whether the claim is "core" or "non-core." *In re Orion*, 4 F.3d at 1101; *Sec. Farms*, 124 F.3d at 1008 (considering whether non-core issues predominate). The motion to withdraw must also be "timely," that is filed "as promptly as possible in light of the developments in the bankruptcy proceeding," *Sec. Farms*, 124 F.3d at 1007 fn. 3, though the court may still withdraw a reference "on its own motion" at any time. 28 U.S.C. § 157(d); *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 805 (9th Cir. 1991).

   Here, the Court is persuaded that cause exists to withdraw the reference of proceedings related to the Trustee's request for the institution of criminal contempt proceedings. The

ORDER
PAGE - 9

bankruptcy judge's recommendation to this Court establishes that the bankruptcy court finds criminal contempt sanctions against Mr. Tift appropriate after extensive briefing and hearing testimony on the issue of the Zandt 2 filing.   However, the law of this Circuit ties the bankruptcy court's hands by preventing it from imposing criminal contempt sanctions.  *In re Lehtinen*, 564 F.3d 1052, 1058-59 (9th Cir. 2009), *cert. denied*, 558 U.S. 1048 (2009).   In contrast, this Court has criminal contempt powers as set forth in 18 U.S.C. § 401 and as governed by Federal Rule of Criminal Procedure 42.   Thus, this Court finds that no judicial economy or efficiency would be promoted by leaving these proceedings with the bankruptcy judge, who is powerless to impose the type of sanctions that he deems appropriate.   To do so would delay, at best, the resolution of this issue.   Accordingly, the reference of proceedings related to the U.S. Trustee's request for criminal sanctions against Mr. Tift is withdrawn from the bankruptcy court.   The remainder of the bankruptcy proceedings continues to be referred to the United States Bankruptcy Court for the Western District of Washington.

2. *Criminal Contempt Proceedings*

The power of this Court to punish criminal contempt is established by 18 U.S.C. § 401 which states in pertinent part:

> A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as –
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
> . . .
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

As the plain text of the statute makes clear, judicial discretion is a fundamental element of a court's contempt power.   "While a court has the authority to initiate a prosecution for

ORDER
PAGE - 10

criminal contempt, its exercise of that authority must be restrained by the principle that 'only the least possible power adequate to the end proposed' should be used in contempt cases.'" *Young v. United States,* 481 U.S. 787, 801, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987) (*quoting United States v. Wilson,* 421 U.S. 309, 319, 95 S. Ct. 1802, 44 L. Ed. 2d 186 (1975) (citation omitted).

In addition, Federal Rule of Criminal Procedure provides:

(a) DISPOSITION AFTER NOTICE.   Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

(1) *Notice.* The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:

(A) state the time and place of the trial;

(B) allow the defendant a reasonable time to prepare a defense; and

(C) state the essential facts constituting the charged criminal contempt and describe it as such.

(2) *Appointing a Prosecutor.*  The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney.  If the government declines the request, the court must appoint another attorney to prosecute the contempt.

(3) *Trial and Disposition.* A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides.  If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents.  Upon a finding or verdict of guilty, the court must impose the punishment.

(b) SUMMARY DISPOSITION. Notwithstanding any other provision of these rules, the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies; a magistrate judge may summarily punish a person as provided in 28 U.S.C. §636(e).  The contempt order must recite the facts, be signed by the judge, and be filed with the clerk.

ORDER
PAGE - 11

Accordingly, the Court will request that a prosecutor from the Office of the United States Attorney prosecute this contempt matter and shall then issue a Notice to Show Cause why criminal sanctions should not be imposed, which shall include the required elements set forth above, and which shall set a time for trial with enough time to allow Mr. Tift to prepare a defense.

## IV.    CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby ORDERS:

1) The United States Trustee's Motion for Withdrawal of Reference (Dkt. #1) is GRANTED.  The reference of proceedings related to the U.S. Trustee's request for criminal sanctions against Mr. Tift is withdrawn from the bankruptcy court.  The remainder of the bankruptcy proceedings continues to be referred to the United States Bankruptcy Court for the Western District of Washington.

2) Mr. Tift's Motion to Deny the Withdrawal of Reference (Dkt. #5) is DENIED.

3) This case shall remain OPEN pending the resolution of criminal contempt proceedings, which shall be held under this cause number.

4) The Court shall request that a prosecutor from the Office of the United States Attorney be appointed to prosecute this matter.

5) Once a prosecutor has been secured and he or she has investigated the alleged criminal contempt, the Court shall institute proceedings under this cause number in which it will issue a Notice to Show Cause why criminal sanctions should not be imposed, which shall include the required elements set forth above, and which shall set a time for trial with sufficient time to allow Mr. Tift to prepare a defense.

ORDER
PAGE - 12

6)  The Clerk shall forward a copy of this Order to Criminal Chief Tessa Gorman of the

Office of the United States Attorney for the Western District of Washington.

DATED this 29 day of July 2015.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 13